**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICIA CRONIN,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 08-5215** |
| | : | |
| **VISITING NURSES ASSOCIATION** | : | |
| **OF ST. LUKE'S HOSPITAL,** | : | |
| **Defendant** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                          **September 30, 2009**

This is an employment discrimination action removed from the Court of Common

Pleas of Northampton County alleging violations of the Americans with Disabilities Act[1]

and the Pennsylvania Human Relations Act.[2]  The defendant, Visiting Nurses Association

of St. Luke's Hospital ("VNA"), has filed a motion to dismiss Ms. Cronin's Amended

Complaint.  I will grant the motion as to the portions of Ms. Cronin's Amended

Complaint alleging retaliation and constructive discharge, and deny it as to the portion of

---

[1]  The ADA provides:  "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

[2]  The PHRA provides:  It shall be an unlawful discriminatory practice, . . . (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.  43 Pa. Cons. Stat. Ann. § 955(a).

her complaint alleging failure to accommodate.

## I. BACKGROUND

Patricia Cronin was hired by the VNA as a Staff Based Hospice RN on September 8, 1997.  Pl.'s Am. Compl. at ¶ 3.  She was suspended on February 8, 2007 for allegedly calling in a prescription without a doctor's order on January 29, 2007.  Id. ¶ 5-6.  At a meeting on February 8, 2007, VNA administrators informed her that they "were not sure that [she was] safe to care for patients" and that an investigation of her conduct was forthcoming.  Id. at ¶ 14.  Ms. Cronin and a Human Resources representative of the VNA, Sharon Carney, had a meeting on February 12, 2007 to discuss the allegations against her. Id. at ¶ 16.  The investigation was completed and Ms. Cronin had a meeting with her supervisors on February 23, 2007 regarding her conduct and the remedial measures the VNA would take in response to it.  Id. at ¶ 20.  At that meeting, although Ms. Cronin's supervisors explained that they had discovered that the doctor did in fact give permission for a call-in order, Ms. Cronin was given a Corrective Action report stating she was on third warning probation.  Id. at ¶¶ 21-22.

That report, which is dated February 19, 2007, indicates that the "second situation" or "problem" with Ms. Cronin "involved RN's report related to current hospice patient, pain-management needs, and following standards of care."  Def.'s Mot. To Dismiss, Ex. C.  The action plan created in response to Ms. Cronin's behavior involved her re-assignment to an RN position at the "hospice house," and warnings that she needed to

"demonstrate professional behavior and practice at all times and with all patients" and that "any incidents of unprofessional behavior or inability to achieve satisfactory performance [would] result in immediate termination." Id. Ms. Cronin was subsequently assigned to shifts she characterized as "various" and "unstable." Def.'s Mot. to Dismiss, Ex. B.

On February 26, 2007, Ms. Cronin submitted a letter from her physician, Dr. Jonathan H. Munves, to Ms. Carney informing her that Ms. Cronin suffered from "Multiple Sclerosis, obstructive Sleep Apnea, Depression, and a Seizure Disorder." Pl.'s Am. Compl. at ¶ 9; Def.'s Mot. To Dismiss, Ex. H. The letter stated that "[t]hese conditions can all be exacerbated by night shift work and reasonable accommodations should be made in light of this." Id.

Ms. Cronin's complaint does not provide the date on which she ceased working for the VNA. She merely avers she was "constructively discharged from her employment because she was removed from the position she had held for so many years and was told that she would have to take a lesser position with the Defendant." Pl.'s Am. Compl. at ¶ 33.

Ms. Cronin had an intake phone call with a representative from the Equal Employment Opportunity Commission ("EEOC") on July 16, 2007. Pl.'s Am. Compl. at ¶ 36. Her counsel requested a copy of the charge of discrimination on July 25, 2007 and August 27, 2007. Id. at Ex. A, B. The charge of discrimination was forwarded to her

3

counsel on September 18, 2007.  Id. at ¶ 38.  Ms. Cronin executed it October 15, 2007

and sent to the EEOC that day.  Id. at ¶ 39, Ex. C.  Ms. Cronin requested a "Right to Sue"

letter from the EEOC on March 19, 2008, and received her Notice of Right to Sue on

March 24, 2008.  Def.'s Mot. To Dismiss, Ex. E; Pl.'s Am. Compl. at ¶ 42.

Ms. Cronin claims that the VNA violated 42 U.S.C. Section 12101, the Americans

with Disabilities Act ("ADA"), and 43 P.S. Section 951, the Pennsylvania Human

Relations Act ("PHRA").


## II.  STANDARD FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure

examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46

(1957).  The factual allegations must be sufficient to make the claim for relief more than

just speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In

determining whether to grant a motion to dismiss, a federal court must construe the

complaint liberally, accept all factual allegations in the complaint as true, and draw all

reasonable inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks County

Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all

of the facts upon which he bases his claim.  Conley, 355 U.S. at 47.  Rather, the Rules

require a "short and plain statement" of the claim that will give the defendant fair notice

of the plaintiff's claim and the grounds upon which it rests.  Id.  The "complaint must allege facts suggestive of [the proscribed] conduct."  Twombly, 550 U.S. at 564.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).  The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).


## III. DISCUSSION

The VNA has filed a motion to dismiss claiming that Ms. Cronin has failed to exhaust her administrative remedies, and is therefore precluded from bringing a civil suit and that she has failed to state a prima facie case of discrimination, retaliation, and constructive discharge in violation of the ADA and PHRA.

### A.    Consideration of Extrinsic Documents

As a preliminary matter, this Court must determine which, if any, of the documents attached to the VNA's Motion to Dismiss may be considered by the Court without converting this motion to dismiss into one for summary judgment.  Ms. Cronin claims in her response to the VNA's motion to dismiss that it has introduced matters outside the

pleadings which may not be considered at this stage of litigation.  Pl.'s Resp. to Def.'s Mot. to Dismiss, 3-6.

In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, any exhibits attached to the complaint, and matters of public record.  Pension Benefit Guaranty Corp. v. White, 998 F.2d 1192, 1196 (3d Cir.1993). However, a plaintiff's failure to attach to the complaint or cite documents that are integral to or relied on in the complaint does not preclude the court from relying on such documents in considering a motion to dismiss.  In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997)("a court may consider a document that is 'integral to or explicitly relied upon in the complaint' without converting the motion to dismiss into one for summary judgment").

Courts may consider a document that a defendant attaches as an exhibit to a motion to dismiss when its authenticity is undisputed and the plaintiff's claims are based on the document.  Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 780-81 (W.D.Pa. 2000) (citing Pension Benefit, 998 F.2d at 1196).

Because Ms. Cronin has failed to identify which of the VNA's exhibits she contends should be excluded and does not contest the authenticity of any document, an analysis of each document's relevance and admissibility at this stage is necessary. Keeping in mind the basic rule that a court may exclude documents "neither mentioned in the complaint nor relied upon in the plaintiff's claims," Rogan, 113 F.Supp.2d at 782, I

6

will exclude from consideration Exhibits A, D, F, and G to Defendant's Motion to Dismiss, and considering Exhibits B, C, E, and H.

### 1.      Exhibit A: Ms. Cronin's Original Complaint

Exhibit A, Ms. Cronin's original complaint filed in the Court of Common Pleas of Northampton County, will not be considered.  After the VNA's removal to this Court and in response to its motion to dismiss the original complaint (Document # 2), Ms. Cronin submitted an Amended Complaint (Document # 8), the content of which will be considered in ruling on this motion to dismiss.  It is well settled that once a plaintiff amends her complaint, the "amended complaint supercedes the original version in providing the blueprint for the future course of a lawsuit." See, e.g., <u>Snyder v. Pascack Valley Hosp.</u>, 303 F.3d 271, 276 (3d Cir. 2002); <u>Johnson v. Know Fin. Group, L.L.C.</u>, 2004 WL 1179335, at *6 n. 4 (E.D. Pa. May 26, 2004) ("[I]t is axiomatic that an amended complaint that does not refer to or incorporate an original complaint supercedes the original complaint and renders it of no legal effect.").  Nowhere in Ms. Cronin's Amended Complaint does she refer to or mention her original complaint.  Therefore, it and any exhibits attached thereto will not be considered in ruling on the VNA's motion to dismiss.

### 2. Exhibits B and E: Basic EEOC Administrative Filings

Exhibits B and E are administrative filings relevant to the VNA's claim that Ms. Cronin has failed to exhaust her administrative remedies, and will therefore be considered.  Exhibit B is the Charge of Discrimination Ms. Cronin filed with the EEOC

and dual-filed with the Pennsylvania Human Relations Commission ("PHRC").  When a

plaintiff makes a charge of employment discrimination, courts have considered, in ruling

on a motion to dismiss, EEOC charging documents and right to sue letters when a

defendant has alleged that the plaintiff failed to exhaust administrative remedies.  See

Rogan, 113 F. Supp. 2d at 782; Tlush v. Mfrs. Res. Ctr., 315 F. Supp. 2d 650, 654 (E.D.

Pa. 2002); Fugarino v. University Servs., 123 F. Supp. 2d 838, 841 (E.D. Pa. 2000);

Shannon v. City of Philadelphia, 1999 WL126097 at *2, n.3 (E.D. Pa. Mar. 5, 1999).

Because Ms. Cronin alleges violations of both the ADA and the PHRA and the VNA has

claimed that she failed to exhaust her administrative remedies, the charge of

discrimination will be considered.

Exhibit E, a letter from Ms. Cronin's counsel to the EEOC requesting a notice of

right to sue, should be considered for similar reasons.  The VNA has argued that, by

requesting a notice of right to sue from the EEOC before the requisite 180 days for

administrative review by the EEOC had expired, Ms. Cronin failed to exhaust her

administrative remedies.  This letter, as evidence of her allegedly premature request, will

be considered.

### 3. Exhibits D and F: Additional EEOC Administrative Filings

Exhibits D and F are administrative filings neither referenced in Ms. Cronin's

complaint nor relevant to exhaustion of her administrative remedies, and will therefore be

excluded.  The VNA cites numerous cases for the proposition that EEOC administrative

documents are automatically admissible regardless of the purpose for which they are offered, but a closer reading reveals that such documents are generally admissible only for limited purposes.  See Lightcap-Steele v. KidsPeace Hosp., Inc., 2006 WL 1147476 at *4-6 (E.D. Pa. Apr. 27, 2006); Evans v. Maax-KSD Corp., WL 3488708 at *2 (E.D. Pa. Nov. 30, 2006)("typically, courts limit their consideration of these public records to determine whether the procedural prerequisites of a plaintiff's claim have been met.")

Exhibit D is a claimant questionnaire from the EEOC administrative record which the VNA references to show that Ms. Cronin voluntarily quit and was not constructively discharged from her position. Because Ms. Cronin does not reference this document in her Amended Complaint and it is not relevant to the VNA's claim that she has failed to exhaust her administrative remedies, it does not fall into the narrow exception for extrinsic documents that the Third Circuit and courts in this District have recognized.

Similarly, Exhibit F, a Short Term Disability Claim Statement, will be excluded for the same reasons. Ms. Cronin does not rely on this statement in her Amended Complaint, and the VNA does not offer it to show failure to exhaust administrative remedies.  Rather, the VNA offers this document to show, in greater detail, the nature of Ms. Cronin's disability and physical limitations.  Ms. Cronin chose not to include this document in her Amended Complaint and, absent inclusion by her, it has no relevance at this stage in the proceedings.

**4. Exhibits C and H**

9

Exhibits C and H are referenced explicitly and relied on in Ms. Cronin's Amendment Complaint, and pursuant to the Third Circuit's ruling in <u>Burlington Coat Factory</u>, 114 F.3d at 1426, allowing documents integral to or explicitly relied upon in the complaint, they will be considered at this stage.

Exhibit C, a copy of the Corrective Action Report issued by the VNA, will be considered.  This report was issued as a result of Ms. Cronin's disciplinary proceedings before her supervisors.  Ms. Cronin refers generally to the proceedings against her at Paragraphs 5, 6, and 17 of her Amended Complaint and refers specifically to the Corrective Action Report in paragraphs 22, 23, and 30.  Because of her explicit reliance on this document, it will be considered at this stage in the proceedings.

Exhibit H is the letter Ms. Cronin's physician, Dr. Munves, submitted to the VNA describing her disabilities and requesting an accommodation.  Ms. Cronin explicitly refers to this letter in Paragraph 9 of her Amended Complaint, and it too will be considered.

## 5.    Exhibit G

Exhibit G consists of two letters from VNA representatives to Ms. Cronin discussing possible alternative positions with her that would satisfy her accommodation request.  Neither of these letters is referred to or relied upon in Ms. Cronin's complaint, and neither is relevant to her EEOC filing.  Both will be excluded.

## _____B.    Exhaustion of Administrative Remedies

_____The VNA claims that Ms. Cronin failed to exhaust her administrative remedies because she requested and received a notice of right to sue from the EEOC before the expiration of the mandatory 180 days of administrative review.  I recommend denying the VNA's motion to dismiss on this ground.

_____Before a plaintiff may file a civil suit for violations of the Americans with Disabilities Act, she must exhaust her administrative remedies by filing a claim with either the EEOC or the PHRC.  42 U.S.C. § 12117; 42 U.S.C. § 2000e-5.[3]  In order to exhaust her administrative remedies, a plaintiff must refrain from filing suit in federal court until the EEOC either dismisses the charge or 180 days have elapsed since the time the charge was filed.[4]  Additionally, a plaintiff must receive a notice of right to sue from the EEOC before filing a civil suit.  <u>Tlush</u>, 315 F. Supp. 2d at 654-55.

Generally, the EEOC will not issue a notice of right to sue prior to the expiration of the 180-day time period it has to review a case.  However, an EEOC regulation allows the EEOC to issue a notice of right to sue prior to the expiration of 180 days when a

---

[3] 42 U.S.C.§ 12117 provides that "the procedures . . . set forth in Sections 2000e-4, 2000e-5, 2000e-6, and 2000e-8, and 2000e-9 of this title shall be the . . . procedures this subchapter provides . . . to any person alleging discrimination based on disability."

[4] 42 U.S.C. § 2000e-5(f)(1) provides that "[i]f a charge filed with the Commission . . . is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."

claimant requests it and an EEOC director "has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect." 29 C.F.R. 1601.28(a)(2).  The validity of Section 1601.28 has been challenged in this Circuit and in others with varied success.[5]  The Third Circuit has yet to rule on the issue, leaving courts in this District to consider only its dicta in <u>Moteles v. Univ. of Pennsylvania</u>, 730 F.2d 913, 917 (3d Cir. 1984), where it observed that "premature resort to the district court should be discouraged as contrary to congressional intent."  It went on to state, in a passage quoted by the VNA, that "[t]he preference for conciliation as the dispute resolution method in employment discrimination proceedings should not be undermined by a party's deliberate by-pass of administrative remedies."  <u>Id.</u>

In this case, a factual anomaly exists: although Ms. Cronin did prematurely request a right to sue letter, it was not issued pursuant to Section 1601.28(a)(2).  Her charge of discrimination was filed with the EEOC on October 16, 2007, and she requested a right to sue letter on March 19, 2008, 155 days after she filed her charge.  Pl.'s Am. Compl, Ex.C; Def.'s Mot. to Dismiss, Ex. E.  She received the notice of right to sue on March 24, 2008.

---

[5] <u>Compare</u> <u>Martini v. Fed. Nat'l Mortgage Assoc.</u>, 178 F.3d 1336 (D.C.Cir.1999) (invalidating regulation as contrary to Congressional mandate that the EEOC investigate all employment discrimination claims) with <u>Sims v. Trus Joist MacMillian</u> 22 F.3d 1059, 1061-62 (11th Cir.1994) (upholding validity of Section 1601.28(a)(2)) and <u>Brown v. Puget Sound Elec.</u>, 732 F.2d 726, 729 (9th Cir.1984), cert denied, 469 U.S. 1108 (1985) (same); <u>see</u> <u>generally</u> <u>Seybert v. West Chester Univ.</u>, 83 F. Supp. 2d 547, 551 (E.D.Pa.2000) (cataloguing the split among courts as to the regulation's validity).

12

Pl.'s Am. Compl., Ex. D.  However, the notice of right to sue issued by the EEOC indicates that "more than 180 days have passed since the filing of this charge."  Id.  EEOC representatives either miscounted the days that had elapsed since the filing of Ms. Cronin's complaint, or made a clerical error in completing her Notice of Right to Sue by failing to issue it pursuant to Section 1601.28(a)(2).[6]

The VNA appears to argue that Ms. Cronin's action in *requesting* a right to sue letter was an especially egregious and deliberate bypass of the judicial process.  Def.'s Mot. to Dismiss at 14-15.  The VNA implies that when the EEOC issues a notice of right to sue pursuant to Section 1601.28(a)(2), it does so because it has determined that the EEOC cannot complete the claim review process, and not because the claimant has made a request for the letter, as Ms. Cronin did here.  Id. (arguing "the right to sue letter attached to the Complaint reveals "it has been issued at [Plaintiff's] request" and stating subsequently that the "EEOC did not determine it could not investigate the claim within the 180-day investigation and conciliation period").  It is clear, however, that a plaintiff receives notice of right to sue pursuant to Section 1601.28(a)(2) only if she requests it. 29. C.F.R. § 1601.28(a)(2) (issuance of notice of right to sue appropriate "[w]hen a person claiming to be aggrieved *requests, in writing,* that a notice of right to sue be issued

---

[6] The Notice of Right to Sue form attached to Ms. Cronin's complaint allows the EEOC representative to choose one of two reasons for issuance of the notice.  The options are "[m]ore than 180 days have passed since the filing of this charge"or "[l]ess than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge."

. . . at any time prior to the expiration of 180 days from the date of filing of the charge . . . provided that the District Director . . . has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge.")(emphasis added).

Therefore, to dismiss Ms. Cronin's complaint for failure to exhaust administrative remedies, this Court would need to determine that the act of requesting a right to sue letter before expiration of 180 days in itself violates 42 U.S.C. § 2000e-5.  Because the EEOC did not rely on Section 1601.28(a)(2) in issuing Ms. Cronin a right to sue letter, this Court need not add to the already substantial body of case law examining the validity of this regulation.  Absent explicit authority that requesting an early right to sue letter violates 42 U.S.C. § 2000e-5, I refuse to dismiss Ms. Cronin's complaint because she did so.  To punish Ms. Cronin for making a request of the EEOC that its own regulations explicitly permit it to grant would be unduly harsh.  See Pearce v. Barry Sable Diamonds, 912 F. Supp. 149, 157 n. 17 (E.D. Pa. 1996) (We hesitate to rely on the dicta of the Court of Appeals [in Moteles, 730 F.2d at 917] to take such drastic action [dismiss[al] . . . with prejudice] . . . since it appears to us that plaintiffs and their counsel did only what the regulation allows them to do).

### C.     Failure to State a Prima Facie Case

In Counts I and II of her Amended Complaint, Ms. Cronin alleges that she had a

disability within the meaning of the ADA and the PHRA, respectively; that the VNA was aware of her disability and her need for an accommodation to perform her job; that she could perform the essential functions of her job; that the VNA refused to grant her a reasonable accommodation; and that the VNA retaliated against her in the form of negative performance appraisals and false accusations after her immediate supervisor became aware of her disability. Pl.'s Am. Compl. at ¶¶ 50-55, 57. The VNA claims that Ms. Cronin has failed to state a prima facie case of failure to accommodate, retaliation, and constructive discharge in violation of the ADA and PHRA.[7]

### 1. Failure to Accommodate

The Third Circuit Court of Appeals has indicated that the McDonnell Douglas burden-shifting framework applies to ADA claims. See Shaner v. Synthes (USA), 204 F.3d 494, 500-501 (3d Cir. 2000); see also Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661, 667-668 (3d Cir. 1999). Under the ADA, a qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds . . . ." 42 U.S.C. § 12111(8). In order to establish a *prima facie* case of disability employment discrimination, a plaintiff must demonstrate that (a) she is a

---

[7] While Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995). Accordingly, the following analysis of the ADA claim applies equally to the PHRA claim. Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996).

15

disabled person[8] within the meaning of the ADA; (b) she is otherwise qualified[9] to

perform the essential functions of the job, with or without reasonable accommodations by

the employer; and (c) she has suffered an otherwise adverse employment decision as a

result of discrimination.  See Shaner, 204 F.3d at 500; see also Gaul v. Lucent Techs.,

Inc., 134 F.3d 576, 580 (3d Cir. 1998); Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d

Cir. 1998).

      However, because the elements of a prima facie case are an evidentiary and not a

pleading requirement, a plaintiff need not prove all elements of a prima facie case in

order to survive a motion to dismiss.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515,

(2002); Gavura v. Pa. State House of Representatives, 55 Fed.Appx. 60, 63, 2002 WL

31781092 at *3 (3d Cir. 2002).  Rather, a plaintiff must, in a "short and plain statement,"

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which

it rests."  FED. R. CIV. PRO. 8(a)(2); Swierkiewicz, 543 U.S. at 512.  The plaintiff must

provide "a statement showing that the pleader is entitled to relief."  Wilkerson v. New

---

    [8]  The ADA defines a disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.  See 42 U.S.C. § 12102(2).  Federal Regulations define a "physical or mental impairment" as either: 1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.  29 C.F.R. § 1630.2(h).

    [9]  Under the ADA, a qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds . . . ."  See 42 U.S.C. § 12111(8).

Media Technology Charter School, Inc., 522 F.3d 315, 321-322 (3d Cir. 2008).

Therefore, a plaintiff claiming violations of the ADA must allege only material facts that,

"in addition to inferences drawn from those factual allegations, provide a basis for

recovery."  Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 124 (3d Cir. 1998).

      The first element of a prima facie case of discrimination requires a plaintiff to

show that she is a disabled person within the meaning of the ADA.  A "disability" is (a) a

physical or mental impairment that substantially limits one or more of the major life

activities; (b) a record of such impairment; or (c) being regarded as having such an

impairment.  42 U.S.C. § 12102(2)(a).  Federal Regulations define a "physical or mental

impairment" as either: 1) any physiological disorder, or condition, cosmetic

disfigurement, or anatomical loss affecting one or more of the following body systems:

neurological, musculoskeletal, special sense organs, respiratory (including speech

organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic,

skin, and endocrine; or (2) any mental or psychological disorder, such as mental

retardation, organic brain syndrome, emotional or mental illness, and specific learning

disabilities.  29 C.F.R. § 1630.2(h).

      The second element of the prima facie case, which addresses whether someone is

"a qualified individual with a disability," 29 C.F.R. pt. 1630.1, App. at 353-54, is satisfied

by meeting a two part test.  First, a court must consider whether "the individual satisfies

the prerequisites for the position, such as possessing the appropriate educational

background, employment experience, skills, licenses, etc." Id. at 353.  Second, the court must consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." Id.

Finally, a plaintiff must show that she suffered an adverse employment action. Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities.  Taylor v. Phoenixville School District, 184 F.3d 296, 306 (3d Cir. 1999).  The ADA specifies that an employer discriminates against a qualified individual with a disability when the employer does "not make reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]."  42 U.S.C. § 12112(b)(5)(A).

Ms. Cronin's complaint is poorly drafted and states only the barest of facts sufficient to support her claim of failure to accommodate.  However, those facts that can be gleaned from it will suffice.  They are as follows: Ms. Cronin suffers from multiple sclerosis, sleep apnea, depression, and seizure disorder.  Pl.'s Am. Compl. at ¶ 45.  Her supervisors at the VNA were aware of her condition when she began working in 1997. Id. at ¶ 47-48.  The VNA failed to work with her in finding another position after she requested an accommodation by submitting a letter from her physician expressing that Ms. Cronin's conditions were exacerbated by night shift work.  Id. at ¶ 8, 56, 57.  She was

18

"not made aware of the standing/walking, lifting, carrying, and pushing/pulling requirements until she requested accommodation in the form of a day shift position." Id. at ¶ 60.  With appropriate planning, she was "able to fulfill her job requirements with few accommodations." Id. at ¶ 59.  Although Ms. Cronin fails to directly identify which major life activities are impaired by her illnesses, a liberal reading of her complaint allows me to infer that her disabilities affected her ability to stand, walk, lift, carry, push or pull, making her unable to perform a day shift position without some accommodation. Similarly, her assertion that she could perform her job with few accommodations is sufficient at the pleading stage.  Finally, because Ms. Cronin shows that she did in fact request an accommodation and claims that did not receive one, she meets the burden of sufficiently pleading the third element of a prima facie case of failure to accommodate.

As a result, I will deny the VNA's motion to dismiss the portions of Ms. Cronin's complaint alleging failure to accommodate.

### 2. Retaliation

The ADA retaliation provision prohibits an employer from discriminating against an individual "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  To establish a prima facie case of retaliation the plaintiff must show that (a) the employee engaged in a protected employee activity, (b) the employer took an adverse

employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Fogleman v. Mercy Hosp. Inc., 283 F.3d 561, 567-68 (3d Cir.2002).  A request for a reasonable accommodation is a protected activity for purposes of showing retaliation.  Williams v. Philadelphia Hous. Auth. Police Dept., 380 F.3d 751, 759 n. 2 (3d Cir.2004).

Ms. Cronin alleges that the VNA "retaliated against her for requesting an accommodation."  Pl.'s Am. Compl. at ¶ 51.  The facts in Ms. Cronin's Amended Complaint, when read in the light most favorable to her, indicate that the only time she requested an accommodation from the VNA was on February 27, 2007, when she submitted a letter from her physician indicating her diagnoses.  Id. at ¶ 9.  She explicitly states that "she was never accommodated for her disability in the nine years that she worked for Defendant" prior to that time.  Id. at ¶ 58.  Ms. Cronin explains at length in her complaint the disciplinary proceedings initiated because of her call-in of a prescription.  Id. at ¶ 20-28.  These proceedings culminated in a February 23, 2007 meeting between Ms. Cronin and her supervisors.  Id. at ¶ 20.  Ms. Cronin alleges that, although she was cleared of the charges, she was not allowed to return to her previous position "and was offered a lesser position at the Hospice Home."  Id. at ¶ 31, 32.

However, the facts as alleged in Ms. Cronin's Amended Complaint and as evidenced in the Corrective Action Report make clear that *all disciplinary proceedings*

*involving Ms. Cronin took place prior to February 27, 2007*, the only date on which she claims to have requested an accommodation for her disability.  Id. at ¶ 28-28, Def.'s Mot. to Dismiss, Ex. C.  This report indicates that Ms. Cronin's supervisors completed the Corrective Action Report on February 19, 2007, and discussed it with Ms. Cronin on February 23, 2007.  Def.'s Mot. to Dismiss, Ex. C.  The decision to place Ms. Cronin into a new position at the hospice house was memorialized on February 19, 2007.  Id.  Because there is absolutely no causal connection between Ms. Cronin's request for an accommodation and her placement into the hospice house that can be inferred from her complaint, Ms. Cronin's allegation of retaliation lacks sufficient factual support.

As a result, I will grant the VNA's motion with respect to the portions of Ms. Cronin's complaint alleging retaliation.

### 3. Constructive Discharge

To prove constructive discharge a plaintiff must show that: "(1) he or she suffered harassment or discrimination so intolerable that a reasonable person in the same position would have felt compelled to resign . . . and (2) the employee's reaction to the workplace situation-that is, his or her decision to resign-was reasonable given the totality of the circumstances."  Suders v. Easton, 325 F.3d 432, 445 (3d Cir.2003)(overturned on other grounds).

Although Ms. Cronin appears to allege that she was constructively discharged, she makes no attempt in her complaint to assert this claim separately and clearly.  She uses

the phrase "constructive discharge" but once - in the section of her complaint in which she sets forth the facts supporting her legal claims - and simply states that she was constructively discharged because she "was removed from the position she had held for so many years and was told that she would have to take a lesser position with the Defendant."  Pl.'s Am. Compl. at ¶ 33.

Because Ms. Cronin fails to make clear whether she was fired from her position with the VNA or, alternatively, resigned, and fails to clarify which "lesser position" she is referring to in this paragraph of the complaint (the position she was assigned as the result of the disciplinary proceedings against her or one she was offered in response to her request for an accommodation), she has not set forth material facts sufficient to notify the VNA of the grounds for this charge.

Therefore, I will grant the VNA's motion as to the portion of Ms. Cronin's complaint alleging constructive discharge.


## IV. CONCLUSION

For the foregoing reasons, I will grant the defendant's motion as to the portions of the plaintiff's complaint alleging retaliation and constructive discharge, and deny the defendant's motion as to the portions of the plaintiff's complaint alleging failure to accommodate.